NINTENDO CO, LLC v. NINTENDO CO, LTD May it please the Court, Drew DeNova on behalf of IA LABS, Your Honor. We're here today for three main issues. First, the District Court's claim construction of isometric exercise under the 982 patch. Second, the District Court's grant of summary judgment based on that construction. And third, the District Court's determination that this case is exceptional in grant of attorney's fees under the 226 patent. Mr. DeNova, you say at page three of your opening brief that from 2006 to 2008, IA LABS negotiated with NINTENDO to license or sell one or more of the lab's patents, including 982 or other intellectual property. Where in the record is that history of negotiations? I can't point to the specific citations in the record, Your Honor, but I will get them for you. But the history is that the companies met. It was a predecessor company to IA LABS from which the patents were acquired in an insolvency proceeding. But the same principles were involved. So, for example, Mr. Merrill is present in the courtroom today, the other inventors that were involved negotiated with NINTENDO at the time with respect to the inventions disclosed. NINTENDO said in its brief that there was no such history of negotiation, that there was some general letter during those two years and that's it. Is there more than that? There's absolutely more than that, Your Honor. There was in-person meetings that were the subject of testimony. And you have that in the record? That I'm not sure about, Your Honor, because I don't know that it was directly relevant to the grant of summary judgment. But I'm going to get those to you if I can. On your brief voice, can we start with the exceptional case finding just so that we don't lose that point when you run out of time, as everybody inevitably does? So, my problem here is that your primary focus, your primary complaint is that you feel that the district court didn't make enough findings on the objective. Is that fair? That is, Your Honor. All right. Now, under Highmark, that's a de novo review of the record. So, I think that what you're saying is that we would have to then go through the record and either say there's enough in the current record to support an objective finding or not. Is that right? It is, Your Honor, although standing outside of the rubric of the objective and subjective analysis, the sole basis on which Nintendo sought to relieve the finding of exceptional case and the basis on which the district court granted it was the finding that the 226 patent was invalid in its entirety. And so, we think that that… Under 102B? Yes, Your Honor. And for example, the dependent claims in 3 and 11 relating to strain transfer material, 14 and 23, which characterized that strain transfer material was being based on an epoxy resin. Even as we sit here today, there's nothing in the briefing that is suggestive at all that those elements were present in what was allegedly on sale or in public use. You may be right or you may be wrong. I'm a process person. What I'm trying to get at is you complain a lot about the fact that the district court made that finding in general terms, simply said your argument to the contrary was disingenuous and found the objective prong to be satisfied.  Isn't it our job under Highmark to now go into the record and either agree with you that there's not enough there or not agree with you, but whether or not we're unhappy with what the district court did on that prong is really somewhat irrelevant, isn't it? Yes, it is, Your Honor. Okay. But on the subjective prong, you agree that whether you think they were sufficient or not, that there were some specific factual findings that were made on the subjective prong. Yes, and I understand that that's subject to a different standard of review. Okay. All right. You can go back to your other argument. So I'd like to turn to the construction of isometric exercise if I could, which was the first point. The district court adopted a construction of isometric exercise that excluded certain fundamental types of isometric exercise, specifically envisioned by the patent. And so, for example, the district court excluded the possibility that a person might isometrically exercise by exerting muscle force against the user's joints. And that, in fact, is specifically contemplated in a number of examples in the patent at column 1, lines 26 through 37, including pulling apart hands, fighter jet pilots performing isometric exercises such as contractions of the lower limbs, and pushing away from a stationary surface. Now, the stationary surface that's parenthetically used as an example in the patent is the wall. But it might just as easily have been the floor, because with respect to isometric exercise, what you're looking for is an object that substantially resists movement. Excuse me. And the reason that the floor or the wall work, the sole reason that the floor or the wall work is because of the gravity, which prevents movement away from… So is weight shifting always isometric exercise? No, Your Honor. Absolutely not. And so, for example, with respect to isometric exercise, the figure 2 of the patent is probably the principal embodiment that's disclosed, and it looks sort of like a bike's handlebars extending perpendicularly to the ground, or excuse me, in parallel to the ground. The user could very easily have slumped over it and thus exerted some force on those handlebars, which would be weight shifting, or the user could depress those bars using isometric muscle force. And I think the important thing about that particular embodiment and what the district court disregarded is that that muscle force is communicated to those effectors indirectly. That is, that muscle force, the genesis, would be the shoulders, typically, or the biceps or triceps or some other part of the torso, and it's not the hands. The hands are in direct contact with the effector. So when the district court adopted, with Nintendo's agreement, a construction that the effector to provide isometric exercise merely has to be in direct or indirect contact to resist force of isometrically exercised muscles, that's directly contrary to what the district court ultimately adopted, which precluded the possibility that isometric exercise could be in opposition to the user's body. Now, the reason, and I think what the false dichotomy is here, is the district court concluded, and Nintendo contends in its brief, that the effector must be the only thing that resists movement. And of course, that's not what actually happens in isometric exercise. What you have is, for example, in a calf strain shown in figure two, where the user has a foot effector, the calf muscles will be strained, that will impinge upon the ankle, and then there is what's called a joint reaction force, because the ankle is essentially a stationary rigid object. There's a joint reaction force that is transferred from the calf to the ankle, and then through the ankle to the foot. Let's look at the claims, the actual limitations of the claims. As the district court pointed out, you have in claim one, the second paragraph, at least one sensor coupled to said rod, and responsive to at least one force applied by said user to said effector to perform said isometric exercise. How can you take the application of force to the effector, which then, in turn, is how the isometric exercise is performed? How can you take that out of the claim? We're absolutely not trying to do that, Your Honor. What we're suggesting is that the isometrically exercised muscle does create a very significant force. That force impinges upon the ankle. The ankle then transfers that force through the foot. But the force is supposed to be applied to the effector? Yes, Your Honor. In your claim? Yes, Your Honor. And so from the foot, I'm sorry, maybe I didn't complete the chain of events. So from the foot, it's essentially a chain of transferring forces. So the calf will transfer to the ankle. The ankle will transfer to the foot in two places, actually, typically. The analysis is through the toes or through the heel. And then that will be transferred to the stationary surface, in this case, the effectors of the balance board. And so Dr. Phillips, the expert of Nintendo, ultimately agreed in his supplemental expert report that there is a downward force associated with isometric exercise. And he quantified the amount of that force in a standard calf strain. And what's important about that is the district court failed to consider it. In fact, it refused to consider it. It was submitted by Dr. Phillips per the court's order approximately a week before the court granted summary judgment. We attempted to submit that evidence to the district court, and the court refused to consider it. Now, your friend on the other side argues that that's not an accurate characterization of the record, that the court actually considered it but found it not to change its analysis. No, Your Honor. The court refused – well, during the summary judgment phase, the court refused to consider it. In fact, excluded our motion to add supplemental summary judgment briefing. Whether the court considered it in connection with the motion to reconsider is a separate issue, I suppose. But certainly in the summary judgment order, there's no consideration of Phillips supplemental expert report. But there was a motion to reconsider, and in the motion to reconsider, in response to that, the court said, you know, I'm not going to reconsider because I don't find that it makes any difference. Isn't that right? That's true. So it's kind of unfair to say the court never considered it. That's fair, Your Honor. But in the summary judgment order itself, I think it's telling that the court never cited to anything in the record. Essentially what the court did is consider Dr. Drury's very extensive analysis of every force associated with isometric muscle strain, every single one. And that was based on Dr. Inoka, who was a preexistent expert in the field, who Nintendo's own expert cited and has never attacked as not authoritative. He considered those conclusory. He never – the court never cited anything other than determining that there was a conclusory assessment made by Dr. Drury. Well, what he really said was that Dr. Drury made some assessments about isometric exercises in a vacuum, but those assessments were removed from the way in which the isometric exercise was described in the patent itself. Isn't that fair? He did, but again, there's no indication. Nintendo chides us for taking positions that are inconsistent with science and relying on expert testimony for purposes of claim construction. But what the district court did was supplanted its own assessment of human physiology and physics for that of the experts in the case, and we don't believe that that's the appropriate province of the district court. Or did the district court substitute the definition from the written description for what your experts said? Well, he did more than that, because first of all, what is characterized as a definition is immediately followed by a number of examples that expand on it that include instances in which the body is in opposition to the joints. Second of all, figure two shows no one is suggesting, I don't think, that the hands are what is being isometrically exercised when you hold onto a bar, or that the feet are what are being isometrically exercised when you press on the foot effector. So in both of the preferred embodiments, what happens is that it is other muscles that are directing force into the joints, which is ultimately directed to the effector. I would point out, if I could, how dramatic the force is as a result of isometric exercise. So using Dr. Phillips' own numbers from Nintendo, in Dr. Drury's supplemental report in response a few days later, he depicts, I think quite convincingly, at A9-232, the difference between a user standing stationary and exerting his or her muscles only to maintain balance, which results in approximately 13 pounds in the front effector and 67 on the rear, versus an isometrically strained calf muscle, which increases the front effector force to 40, which is 208%, and decreases the rear effector by 40%. So we're talking about a dramatic difference in the amount of force that is exerted on each effector. And I would also point out, before my time expires, that the district court looked at aggregate force, which is not what the claims are directed to. The claims are directed to each effector. So the district court, in its opinion, referred to the fact that aggregate force is somehow maintained during normal usage at the user's weight, and I think the example was 160 pounds. That's not what's relevant. What's relevant is whether the force to an effector as a result of isometric exercise varies, and the answer is it varies dramatically, markedly, 3x as a consequence of isometric exercise based on Dr. Phillips' own numbers as interpreted by Dr. Drury. Before we end this part, Nintendo says in their brief that IAO Labs argued to the district court that only a single claim element, the tube design, was missing from Kilowatt. Did you argue anything else to the district court? Your Honor, we argued that there was an improper approach, that there was essentially a burden shifting, that it's their burden to show by clear and convincing evidence in validity, and that, by this court's jurisprudence, requires a claim-by-claim, element-by-element analysis. We did point out it is an exemplary failure on Nintendo's part, the tube-in-tube approach. And I would finally point out, since we're on this topic and there is a de novo review, that there were three witnesses on the side of saying that this earlier prototype, which didn't embody the claims, was what was publicly displayed prior to the critical date. There was a single witness, Mr. Sy, who had a contrary recollection. And then the sole written evidence of record is a log at A3319, which was dated two months after this trade show that occurred in January 2004, and it shows fundamental problems. So it supports us, fundamental problems with the tube-in-tube design, with the sensors, all of which are claim elements, and the printed circuit board. Well, the fact that maybe you had to tweak the design under our case law doesn't change the fact that if it was offered for sale, it's still out there. Agreed, Your Honor, but what is required is at least something that is ready for patentability, which would include conception. You're advertising it for sale. Well, this is an important point, Your Honor. What we advertised was the kilowatt. We did not advertise the subsequent iteration of the kilowatt. And so what Nintendo has attempted to do is try to show something was on sale, but what it's failed to do is to show what was on sale and that what was on sale met the limitations. And I would say that, in response to your question, Your Honor, what is required is at least a conception of the invention. And I think that the document at A3319 indicates that there was no complete and operative conception of the invention because it wasn't working. It couldn't be manufactured based on that evidence. Thank you. Let's hear from Nintendo. We'll save your rebuttal time. Mr. Redding. Thank you, Your Honor, and may it please the Court. The arguments that you have heard emphasize a major distinction between the balance board and the invention of the 92 patent, which is that the balance board is focused on detecting the center of pressure and how the center of pressure changes left to right, forward and back. As the district court said, there is no evidence showing that the balance board is able to distinguish weight from isometric muscular force, even if there is isometric muscular force applied to the balance board. And there's no evidence that the balance board is in any way able to detect isometric muscular force. Well, you would concede that at least with respect to some of the environments, the ski jump game, etc., that there would be likely isometric force involved in standing still or leaning forward, correct? We would agree, Your Honor, that one can perform isometric exercises standing on the balance board. We would not agree, Your Honor, that isometric muscular force is applied directly to the balance board. Does it have to be direct? You heard that debate. It's been in the brief. They hit that hard on the reply brief. Poor choice of words on my part, Your Honor. That isometric muscular force is applied to the balance board at all. The sole evidence that they have on this subject is the conclusion from their exercise physiologist, Dr. Drury, that when a person is in a crouch position, as I am now, bending their knees, that their weight is converted from weight into muscle force directed to the balance board. And as the district court correctly recognized, that's semantics. If you're a person like me weighing approximately 200 pounds and you're standing, for example, on a bathroom scale with your knees locked, the bathroom scale detects 200 pounds. If you crouch, as I'm crouching now, the bathroom scale detects 200 pounds. Unfortunately, that's true. The argument from Dr. Drury is that in the crouch position, because the center of pressure has changed, that the load cells in the balance board are now detecting where the center of pressure is different, that somehow that's an indication that your weight has disappeared and it's become muscle force. One way of looking at this is that your muscles hold you up. If I relax all my muscles, regardless of whether my knees are locked or whether I'm in a crouch position, if I relax all my muscles, I fall down. Yet the argument from Dr. Drury, based on, as the district court said, a single set of facts that really aren't in dispute, the argument from Dr. Drury is that somehow in the crouch position, the muscles are now exerting force downward, downward onto the load cells in the balance board. Well, if that were the case, when you stand on a bathroom scale and you crouch, then the scale would increase in its reading. But it doesn't. It's exactly the same thing. So as the district court recognized, what Dr. Drury was doing was semantics. He was relabeling weight as muscle force without any explanation, and this is the key part, without any explanation for what happens to that weight. It's just a conclusion. There's no way that a reasonable jury could conclude that there was infringement from these facts. It's an absence of a genuine issue of material fact. What the appellant's argument boils down to is a contention that every time that there is an expert opinion, one has to go to trial. One can't have summary judgment, and there are many cases to the contrary. How do you respond to your friend on the other side argues that the trial court too narrowly read the written description when the trial court said that only the effector could be what is allowing for the isometric force? Well, Your Honor, we don't believe that that's what the district court said. We don't believe that the district court said only the effector. The district court said that the effector must be the object that resists force, but nothing in the district court's opinion says that there can't be anything intermediate between the effector and the muscle force. In fact, when the district court in its construction of provides talked about indirect and direct force, the district court was talking about precisely that. If you look at figure one and figure two of embodiments where the user is gripping a bar and pushing it or pulling it, if, for example, they're using their shoulder muscles to push, those shoulder muscles are acting through the skeleton and through the hands and through the skin to eventually get to that handlebar effector. That's what the indirect force is all about. So we believe that the district court expressly recognized that one can have something in addition to an effector that the muscle force acts through. What the district court was actually saying, though, is that there must be an effector that the muscle force is applied to. It can't be something other than an effector without an effector. If I can, I'd like to talk a little bit about the attorney fee issue. Okay. Because we have, we believe, overwhelming evidence on the only issue that was any substantial focus at the district court level, and that was this objective. And you used the word mountain of evidence in your brief, but looking at the evidence, is there really, there's plenty of evidence that it was on sale and marketed. I'll give you that. But the question is whether or not it contained the tube within a tube limitation. That's correct, Your Honor. And what specific evidence other than that inventor testimony do you have to establish that fact? We have written corroboration in the form of progress reports on the kilowatt dated before the critical date that showed that they were discussing their assembly problems with inserting the inner tube into the outer tube. Those were all dated before the critical date. They corroborate the testimony of Mr. Sy, one of the inventors, showing that the conception of the tube in the tube did indeed occur before the critical date, and contradicting the argument. But the conception, it doesn't show that it was embodied, does it? Well, the only argument made by the opposing side, Your Honor, by the inventors, was that they couldn't have conceived of it before the critical date because Mr. Schatz, one of the named inventors, hadn't been hired until after that point. So this was evidence that corroborated Mr. Sy's testimony, saying that no, it was indeed conceived before the critical date. Is there a question of whether or not there were two different conceptions? In other words, one type of tube within a tube and then another type of tube within a tube? That issue hasn't been raised, Your Honor. They're just saying the tube within a tube was not embodied in the kilowatt. That's correct. The opponent is saying that the tube in the tube was not conceived before the critical date, and therefore it couldn't have been embodied. It doesn't matter that it was conceived. The question is, was it embodied? Yes, Your Honor, that is the question, and we believe that the testimony of Mr. Sy shows that it was embodied in the kilowatt. As I understand it, what the question was at trial, or at argument, was that it had to have been conceived because it was embodied, and the counterargument was, no, no, it hadn't been conceived yet, so it couldn't possibly have been embodied, and the court said, no, it's there. Is that not correct? That's essentially correct, Your Honor. And, of course, this is not a summary judgment question, so the judge was entitled to, as he did, resolve these disputed issues and concluded that the argument from the opponent was disingenuous. That is, the weight of the evidence was in favor of the kilowatt actually having these features. Well, the press statements. But the problem is under Highmark, like it or not, we can't give any deference to that conclusion, can we, even though it's a factual conclusion? Under Highmark, that is correct, Your Honor. We do understand that there is some uncertainty as to whether Highmark applies, but assuming that the standard is a de novo review, which is what Highmark says, then you're not required to give any deference to the district court's decision. Nevertheless, the district court's decision, we believe, is well-reasoned. I'd also like to address the argument that there should have been an element-by-element analysis. We believe that the record shows all of the features of the kilowatt and that those features were present in the kilowatt at the time that it was placed on sale. The argument that there should have been an element-by-element analysis was not made in the Section 285 briefing, but it was only made in the motion to alter or amend after the judgment had been entered. So the appellant had the opportunity at the district court level to argue that Nintendo should have presented a claim chart or that the district court needs to make an element-by-element analysis. Neither of those arguments were made. The only argument that was made during the Section 285 briefing was that the tube in the tube was missing, and that was analyzed to some extensive degree by the district court. So essentially, the district court was not given an opportunity until a motion to alter or amend after the final judgment to evaluate the question of whether there should have been. And even in that motion, they didn't point out, they didn't make any real argument that something else was missing, did they? That is correct, Your Honor. There was reference to some other items, but they were vague references. The focus, again, was on the tube in the tube argument in the motion to alter or amend. So what we believe we have, Your Honor, is an absolute, I called it a mountain of evidence, but overwhelming evidence that was carefully considered by the district court on the only issue that was really presented. It was only argued by the parties, which was the subjective prong. There was no debate on the objective prong. There was no debate that the patent was invalid. If we go back and do de novo, what's your record evidence to support the objective determination of baselessness? The features of the kilowatt are described in the various press releases, publications, and descriptions of the activities at the various conferences. They include photographic evidence showing that the kilowatt looks and is identical to one of the embodiments of the patent, the figure 3A, I believe, in the patent. And then there's the testimony of Mr. Sy, which is corroborated by the reports, the progress reports showing that the tube in the tube construction was something that preexisted, the date that the appellant contends that it existed. So the way to the evidence, looking at the record, is that all of the features were present, and those features were present at the time that the product was placed on sale and placed in public use. Would we have to make that de novo finding by clear and convincing evidence? I don't believe that the clear and convincing evidence standard is applicable here because the parties haven't contested validity. This is not the usual circumstance where there's a big battle over whether the patent is valid or not. This is a somewhat unusual circumstance where we have a patent that was disclaimed, and it was disclaimed in response to all of the evidence that Nintendo presented that the patent had been placed on sale and was therefore invalid. But by finding that it would be barred under 102, it's effectively a finding of invalidity, is it not? I mean, I understand the patent doesn't exist anymore, but... Yes, Your Honor, a separate finding under 102 would be a finding of invalidity. But this is an unusual case for the question of what needs to be done because there was the disclaimer and because there was no effort by the opponent to argue that the patent was valid. Instead, there was an argument focused on whether there was a subjective good faith basis for bringing the lawsuits in the first place. And so it really isn't a circumstance where one can say invalidity should have been proven. Invalidity wasn't contested. We argued it was invalid. We presented the evidence from which one could say it was invalid, but because they had disclaimed the patent, there was no contention. To the contrary, there was instead a focus on a good faith basis with the tube in the tube being the only structural issue that was raised. And then, of course, there was the argument that they could rely on the presumption of validity or other issues that the judge carefully dealt with and which we think were properly responded to. So, again, we don't believe that this is a case where one can point to invalidity as an issue that should have been presented in the fashion that IA is arguing. I do want to say as well, going back to the 982 patent, there has been a large focus on the definition of isometric exercise. That's only one of multiple grounds that the district court found for non-infringement. There's the provides language that the effector provides isometric exercise, which is an independent ground showing that the balance board does not enable a user to do anything she wouldn't otherwise be able to do. It's no more than a person standing on the ground versus standing on the balance board. Either way, you can do isometric exercise. There's nothing that's being enabled. And the effector, the so-called effector, which is a load cell, is not the object against which muscle force is being applied. Then there is the in accordance with language, that is, virtual reality scenarios, games, have to be controlled in accordance with isometric exercise. And as the district court said, there is no control of games in the balance board in accordance with isometric exercise because there is nothing in the balance board that detects isometric exercise. And that's an important conclusion from the district court. There's an absence of evidence. There's no evidence saying that the balance board can detect isometric exercise or can distinguish isometric exercise from weight if Dr. Drury's theory of weight being converted into isometric muscular force were true. So that absence of evidence by itself is another ground justifying the non-infringement. And I see that my time is about to expire. It is. I think we have the argument. Thank you, Mr. Reedy. Thank you, Your Honor. Mr. De Novo, we'll be glad to hear your views on the attorney fee aspect as well. I'm sorry, Your Honor? We'll be glad to hear your view on the attorney fee aspect as well. Okay. Very well, Your Honor. So we'll start with that. You had a chance to check the record. Did you find sites for me? I'm sorry, Your Honor. Those citations are not in the record. I don't think they're directly on point. I apologize that they're not available. The progress reports that Nintendo is directing the court's attention to were two months after the alleged event in January 2004. So these progress reports were in March 2004 and indicated that it was a work in progress. There were major problems. But it was still before the bar date, correct? It was before the bar date. But as the court has indicated, it's more of a question of what was put on sale or what was publicly displayed in January two months earlier. And so there's a real question. There was a separate prototype where you asked, I think, whether there was a tube-in-tube design that was a second prototype. And the question or the answer is that there was another prototype where the sensor was on the exterior of the device. And so the fundamental question is when was that transition made to the tube-in-tube and when was the tube-in-tube conceived in a manner that was actually available or could be effective. But the press releases do not disclose at all. They simply refer to the kilowatt. They don't disclose the interior sensors or the tube-in-tube design. So all of this evidence about press releases does not indicate at all what was allegedly offered for sale. And that's outlined at A2239 through 2242. Going back, if I could, to this notion that all we're arguing is that weight is converted into isometric exercise or weight magically disappears. Of course, we don't take the position that weight disappears. What happens is when one is standing idly and only balancing, then the skeletal frame is exerting most of the force and there's just minor muscle contractions in order to maintain balance. If one adopts a crouch position, the skeleton is no longer in a position to exert force downwardly. So at that point, muscles are required to be contracted, and of course it can be an exhausting process to stay in a squat position for an extended period of time. And that's what Dr. Drury explains and it relies on Dr. Inoka. And so when this position is adopted, isometric muscle contractions are required to maintain that posture. And indeed, Dr. Phillips, Nintendo's own expert, acknowledges that at A9036. And he refers to the fact that the weight is removed. So he doesn't use the term disappear. He says the weight is removed because when an isometric muscle is— But is it the isometric activity that Dr. Drury is pointing to that actually operates the system, the video system? Absolutely. The reality system? Absolutely, Your Honor. What happens is if a person is standing straight up, then there's more force on the heel than there is on the front of the foot. When the person isometrically strains their calf, more of the force—ultimately you can stand on your tiptoes, at which point the entirety of the isometric muscle force would be directed to the— But the balance board is responding to weight shifting. No, Your Honor. Even in Nintendo's own motion for summary judgment, what they indicate is that the balance board can't detect isometric exercise unless one shifts their weight. And so what that means is that, as Dr. Phillips correctly points out, if one tries to exert isometric calf force by pushing down on one's toes, you have a tendency to fall backwards. And the way that that's counteracted is by leaning over. As all the evidence of record indicates, the person would then lean over to prevent from tipping backwards. The corollary is if you try to lean forward, then you will fall over unless you exert your isometric calf muscles, at which point you'll maintain a stationary position. So it absolutely is isometric muscle force that, as Dr. Inoka indicates and Dr. Drury indicates and Dr. Betterson indicates, is through the ankle. And for the first time today, finally after the briefing is over, we hear that Nintendo is okay with the fact that these forces are translated through joints. So the evidence of record, in our view, is quite clear that isometric muscle force results in a sensation by the effector that does control the virtual reality environment. Thank you. Okay. Thank you, Mr. De Novo and Mr. Redinger. The case is taken in consideration.